# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILLIAM CHARLES RULEAU,

      Petitioner,

      v.                                                                Case No. 05-C-1105

TROY HERMANS, Superintendent
Thompson Correctional Center[1]

      Respondent.

## DECISION AND ORDER

      Petitioner William Ruleau filed a <u>pro se</u> petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 on October 18, 2005.  The petitioner was convicted of burglary of a building,

theft of movable property in excess of $2,500, and criminal damage to property.  On May 31,

2002, he was sentenced to two concurrent fifteen-year prison terms, each consisting of eleven-

years incarceration and four-years extended supervision and nine month incarceration also to

be served concurrently.  The petitioner challenges the judgment of conviction which was

entered on March 20, 2002.

      The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the

matter arises under federal statutes.  Venue is proper under 28 U.S.C. § 1391.  The case was

assigned according to the random assignment of civil cases pursuant to 28 U.S.C.

---

[1] The parties advised the court that defendant Ruleau is no longer in custody at Redgranite Correctional Institution. According to the Wisconsin Department of Corrections, the defendant is currently in custody at Thompson Correctional Center.  Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires that the petition name as a respondent the state officer who has custody if the petitioner is currently in custody under a state court judgment.  Accordingly, the court substituted Thompson Correctional Center Superintendent Troy Hermans as the respondent.

§ 636(b)(1)(B) and General Local Rule 3(a) (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

This court conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases and ordered the respondent to serve and file an answer to the petition for a writ of habeas corpus. On November 22, 2005, upon motion of the petitioner, counsel was appointed for him.

The court issued a briefing schedule on the petition. On May 31, 2006, the petitioner filed three motions: Motion to Amend/Correct Petition for Writ of Habeas Corpus (Docket #24), Motion to Stay Proceedings Pending Relief in State Court (Docket #25), and Third Motion for Extension of Time to File Petitioner's Brief, which was granted. (Docket #26). On October 26, 2006, the court granted the petitioner's motions to amend and to stay proceedings. The court ordered the petitioner to file his claims in state court within 90 days of receipt of the order and to file his amended petition within 60 days after the conclusion of his state court proceedings. The court closed the case for statistical purposes on November 28, 2006.

On March 27, 2009, the petitioner filed an amended petition which asserts the following grounds for relief: (1) ineffective assistance of trial counsel, (2) prejudicial joinder, (3) misleading jury instruction, and (4) denial of a fair trial as a result of the cumulative prejudicial effect of the aforementioned errors. The amended petition did not undergo Rule 4 screening.

The court reopened the case on April 6, 2009. On May 8, 2009, the respondent filed his answer to the amended petition for a writ of habeas corpus. (Docket # 55). The parties subsequently briefed the petition and, therefore, the petition is ready for disposition and will be addressed herein.

## APPLICABLE LAW

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214 (1996) which provides in pertinent part:

> (a) [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> . . .
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. Lindh v. Murphy, 96 F.3d 856, 870-877 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F.Supp.2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 120 S. Ct. 1495, 1519 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 120 S. Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that:

> [u]nreasonableness is judged by an objective standard and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 120 S.Ct. at 1522). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington, 219 F.3d at 628.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The facts of this case were set forth by the Wisconsin Court of Appeals in its July 22, 2004, decision on the petitioner's direct appeal:

> In the early morning of October 22, 2001, Helen's Edgewater Tavern in Marinette was broken into and a large safe weighing 920 pounds was stolen. The tavern's cash register tape showed an entry at 12:43 a.m., which police theorized was the approximate time of the break-in. Police were called to the tavern at approximately 4:00 a.m. They followed a trail that was apparently made as the safe was dragged behind a vehicle to a logging road outside Marinette. They found the safe in a wooded area off of this road and put the scene under surveillance. At about 9:00 a.m. officers observed two men, Ruleau and James Dulak, attempting to pry the safe open with a crowbar and maul. The officers surprised the men, who attempted to flee but were caught.
>
> Both Ruleau and Dulak were charged with burglary as party to the crime, felony theft as party to the crime, and criminal damage to property. They were also charged with attempted burglary as party to the crime and criminal damage to property in connection with an attempted break-in at Brothers Three, a restaurant in Marinette. A burglar alarm there went off at approximately 12:25 a.m. on October 22, 2001.
>
> At Ruleau's trial, the State called Dulak as a witness, and he testified under a grant of immunity. He stated he was not admitting any involvement in the theft of the safe, only to the criminal damage to property, and he denied knowing to whom the safe belonged. His account of how he and Ruleau came to be at the wooded area with the safe was as follows. He and Ruleau had planned the evening before to collect aluminum cans for money. Ruleau called him in the morning and told him to come right over and he picked Ruleau up in his mother's car. Ruleau told Dulak he had found something and directed him to the safe.
>
> Ruleau did not testify. The primary theory of defense was that no direct evidence tied Ruleau either to the theft of the safe or to the attempted break-in at Brothers Three. In addition, the defense presented evidence that Ruleau was elsewhere during the general time period of those incidents. Ruleau's girlfriend testified that on the night of October 21, 2001, Ruleau left the house between 9:45 and 10:30 p.m. to go to the jail, where he had to report daily for a "breathalyzer test." She testified that he came back shortly before 12:30 a.m., they were in bed at 12:30, went to sleep, and woke up at 6:00 a.m. Ruleau's presence at the jail for testing the night of October 21 was corroborated by the testimony of an investigating officer called by the State. He testified on cross-examination that Ruleau arrived at the jail at 11:30 p.m. for drug testing, there was no recorded checkout time, and Ruleau was gone at the latest by 12:42 a.m. Finally, the defense attempted to show that Dulak was not credible and was implicated even more than Ruleau by the circumstantial evidence.

(Answer to Amended Petition for Writ of Habeas Corpus [Amended Answer] Exh. F at 5.) On March 20, 2002, a jury convicted the petitioner of the charges related to Helen's Edgewater Tavern. He was found not guilty of the charges related to The Brothers Three Restaurant (Brothers Three).

The petitioner, by new counsel, filed a motion for a new trial in Marinette County Circuit Court, contending that he deserved a new trial in the interests of justice because he received ineffective assistance of counsel and was prejudiced by joinder of the Helen's Edgewater Tavern charges and the Brothers Three charges. On April 16, 2003, the court held a <u>Machner</u>[2] hearing on the motion. On July 24, 2003, Marinette County Circuit Judge Larry Jeske issued a memorandum decision denying the petitioner's motion on both grounds. With regard to the petitioner's ineffective counsel claims, Judge Jeske found that the petitioner's criminal record was skillfully used by trial counsel as part of the defense, that the petitioner's drug use was neither inadmissible character evidence or prejudicial, that the evidence related to an uncharged burglary was damaging to James Dulak, not the petitioner, and that the accomplice instruction was favorable to the petitioner.

In addition, Judge Jeske concluded that although he felt trial counsel should have cross-examined Dulak concerning any pending plea negotiations with the District Attorney's Office, he "certainly did not feel that it was critical to the final outcome in light of all the evidence." (Amended Answer, Exh. B at 7). As to the petitioner's prejudicial joinder argument, Judge Jeske concluded that the petitioner's claim of prejudicial spillover was pure speculation and, accordingly, he denied the petitioner's motion for a new trial.

---

[2] <u>State v.Machner</u>, 92 Wis.2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

The petitioner filed a direct appeal of the trial verdict of his conviction and the circuit court's order denying his motion for a new trial to the Wisconsin Court of Appeals. The petitioner raised four grounds in his appeal. First, he asserted that a new trial should be ordered because the fact-finding process was tainted by the cumulative impact of errors by the trial court and trial counsel. Second, the petitioner asserted that he was denied a fair trial, or in the alternative, he was denied effective assistance of counsel resulting from prejudicial other acts evidence that portrayed him as a drug abuser, liar, repeat criminal offender, and possible participant in another uncharged burglary. Third, the petitioner maintained that he was denied effective assistance of counsel resulting from trial counsel's (a) failure to cross-examine prosecution witness James Dulak concerning consideration he hoped to receive by testifying against the petitioner and (b) failure to object to an accomplice jury instruction, which improperly enhanced the prosecution's theory that he and Dulak were accomplices in the charged offenses. Fourth, the petitioner contended that a new trial should be ordered because of the prejudicial effect of joining for trial the unsupported charges involving the Brothers Three with the charges involving Helen's Edgewater Tavern.

The court of appeals rejected the petitioner's arguments and affirmed his conviction and the circuit court order denying his postconviction motion for a new trial. In its decision, the court initially addressed the petitioner's claims of ineffective assistance of counsel by applying Strickland v. Washington, 466 U.S. 668 (1984). With regard to the other acts evidence, the court concluded that trial counsel "was not deficient for failing to strike Dulak's testimony concerning the petitioner's prior drug use" because "it was a reasonable defense strategy to present evidence that would place Ruleau at the jail as close as possible to the time periods of the two break-ins." (Amended Answer, Exh. F at 7.) The court found that eliciting testimony

about evidence related to an uncharged burglary committed while the petitioner was incarcerated was not deficient because it was reasonable trial strategy used to discredit "Dulak's testimony that the petitioner led him to the safe rather than the other way around." (Amended Answer, Exh. F at 9.)   Likewise, the court concluded that eliciting testimony and electing not to strike Lisa Perket's testimony regarding his four-month incarceration was a reasonable defense "strategy of showing that Ruleau was incarcerated at the time of the radio burglary." (Amended Answer, Exh. F at 10.)  Failure to strike Ms. Perket's testimony of an earlier one-month incarceration was also deemed not deficient and that striking such testimony would have provided minimal benefit to the defendant.

With regard to the accomplice instruction, the appeals court agreed with the petitioner that "the instruction could have been clearer by referring to the specific crime Dulak admitted committing." (Amended Answer, Exh. F at 12.)  However, the court ultimately concluded that it was "very unlikely the instruction led the jury to believe that Dulak admitted involvement in all five crimes." (Amended Answer, Exh. F at 12.)  Moreover, the court reasoned that even if the jury did believe that Dulak admitted involvement in all five crimes, that belief would not have prejudiced the petitioner given his defense strategy of painting Dulak as the burglar, not himself.   Therefore, the court determined that trial counsel's decision "was a reasonable defense strategy within the range of professionally competent assistance." (Amended Answer, Exh F at 12).

The court of appeals then determined that trial counsel's failure to cross-examine Dulak concerning a possible plea deal was deficient, but concluded that counsel's failure to do so did not impact the jury's verdict.  The court reasoned that the jury had before it other evidence from which it could infer Dulak's motivation to implicate the petitioner while denying his own

involvement, Dulak's credibility in general was undermined in a number of other ways, and Dulak's testimony that he was unwittingly led to the safe by the petitioner was undermined in specific ways.

The court also addressed the petitioner's prejudicial joinder argument. The petitioner had asserted that allowing the jury to hear evidence about the attempted burglary and criminal damage to property charges involving the Brothers Three, of which he was acquitted, resulted in prejudicial spillover evidence. After electing not to decide whether the retroactive misjoinder theory presented by the petitioner should apply to the petitioner's case, the court concluded that the petitioner was not prejudiced by such evidence because "[t]here [was] no basis for believing that the jury convicted Ruleau of [the Helen's Edgewater Tavern] charges because of the much weaker evidence on the [Brothers Three] charges on which it acquitted him." (Amended Answer, Exh. F at 21.) Therefore, the court denied the petitioner's request for a new trial on the basis of prejudicial joinder.

Finally, the court determined that the petitioner was not entitled to a new trial in the interest of justice based on the cumulative effect of the claimed errors the court had already considered. The court found that the petitioner failed to explain what important testimony was excluded from consideration by the jury and that certain evidence which was improperly received clouded a crucial issue in the case. See State v. Chu, 253 Wis.2d 666, 643 N.W.2d 878 (Wis. App. 2002). Therefore, the court declined to exercise its discretionary powers to reverse the judgment. The petitioner subsequently filed a petition for review to the Wisconsin Supreme Court, which was denied on October 19, 2004.

On October 18, 2005, the petitioner, proceeding pro se, filed his petition for writ of habeas corpus with this court. Counsel was appointed for him on May 31, 2006, counsel moved

the court to stay the federal habeas proceedings pending relief in state court.  The court granted his motion.

Thereafter, petitioner's counsel filed a motion for collateral postconviction relief in the state trial court pursuant to Wis. Stat. § 974.06, "alleging ineffective assistance of his trial counsel and by implication his first appellate counsel."  (Amended Answer, Exh J at 1).  The petitioner's motion set forth instances of ineffective assistance of counsel not raised in his 2003 motion, including: (1) failure to meet with and prepare, Lisa Perket, the defense's alibi witness, (2) failure to examine footprint evidence left at the crime scene, and (3) failure to timely followup on allegations of jury tampering.   The petitioner asserted that these deficiencies, when considered with counsel's failure to cross-examine Dulak regarding his plea negotiations, provided sufficient grounds for a new trial.

Marinette County Circuit Court Judge Michael T. Judge considered and rejected the petitioner's contentions that his trial and appellate counsel provided ineffective assistance.  The judge found that "[a]lthough it was a reasonable defense strategy to present evidence that would place Ruleau at the Menominee County Jail as close as possible to the time periods of the two break-ins, it certainly was not reasonable that trial counsel did not meet or prepare the alibi witness prior to trial."  (Amended Answer, Exh. O at 105.)   Although the court concluded that trial counsel performance was deficient by failing to prepare the alibi witness, the court found that the petitioner had not established that the results of the trial would have been different.  Thus, the judge denied the petitioner's motion, finding that the petitioner failed to show that counsel's deficient performance affected the outcome of his case.

The petitioner appealed the court's decision to the Wisconsin Court of Appeals which affirmed the trial court's ruling, but on different grounds.  Specifically, the court held that the

petitioner's claims should have been barred pursuant to State v. Escalona-Naranjo, 185 Wis.2d 168, 517 N.W.2d 157 (Wis. 1994) because they could have been raised in his 2003 motion and because he failed to show sufficient grounds for failing to raise these claims at that time. The appeals court, in a concluding footnote, determined that the claims would be denied on the merits if they had not been procedurally defaulted.

The petitioner then filed a petition for review with the Wisconsin Supreme Court. His petition was denied on January 19, 2009. Thereafter, this court re-opened the petitioner's federal habeas proceedings.

## ANALYSIS

The petitioner's amended writ of habeas corpus asserts the following grounds for relief: (1) ineffective assistance of counsel; (2) prejudicial joinder; (3) improper instruction of the jury; and (4) cumulative prejudicial effects. The court will address each in turn.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner asserts that he was denied his Sixth Amendment right to effective assistance of trial counsel in five ways, specifically counsel's (1) failure to adequately prepare his alibi witness prior to trial; (2) failure to properly cross-examine Dulak, the state's lead witness and the petitioner's alleged co-actor, regarding ongoing plea negotiations related to the same charges; (3) elicitation of or failing to object to testimony regarding the petitioner's prior acts and character; and (4) agreement to a misleading accomplice jury instruction inconsistent with the trial evidence. As to his ground (5), the petitioner asserts that the cumulative effect of counsel's errors necessitates habeas relief. The petitioner further asserts that the state court's findings that none of these instances of ineffective counsel were prejudicial to the outcome of the

petitioner's case is contrary to or an unreasonable application of the test for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 686 (1984).

In response, the respondent begins by asserting that review of the petitioner's first and fifth grounds for relief are barred by the doctrine of procedural default. Citing to Dellinger v. Bowen, 301 F.3d 758, 765 (7th Cir. 2002), the respondent asserts that when a state court denies a prisoner relief on a question of federal law, but bases its denial on an independent state procedural ground, the federal question is procedurally defaulted unless the petitioner can show either (1) cause for the default and actual prejudice, or (2) a fundamental miscarriage of justice. The respondent maintains that the petitioner cannot satisfy either exception, and even if he could, the state court's findings were reasonable applications of Strickland. As to grounds two through four, the respondent maintains that the state court's findings were reasonable applications of Strickland.

In anticipation of the respondent's procedural default argument, the petitioner, in his opening brief, asserted that his first and fifth grounds for relief were exhausted in state court. More particularly, the petitioner contends that his first ground for relief, failure to adequately prepare Ms. Perket, his alibi witness, should not be barred because it was raised in his postconviction motion and ruled upon by the trial court on the merits, then raised on appeal and decided on the merits in a footnote. As to his fifth ground for relief, the cumulative effects of trial counsel's deficiencies, the petitioner contends that with the exception to those arguments raised in his motion for postconviction relief, the cumulative prejudicial effects claim made in the petitioner's habeas petition was raised, decided on the merits, and exhausted on direct appeal.

A review of the record reveals that the petitioner's contention regarding his fifth ground for relief is only partially true. On direct appeal, the petitioner did not present a separate

argument that the cumulative effect of trial counsel's errors alone prejudiced the petitioner. Instead, he argued that the cumulative effect of trial counsel's errors, together with prejudicial joinder, and improper jury instruction necessitated a new trial in the interests of justice.  He repeats this argument in his habeas petition which the court subsequently will address.   In short, with regard to the petitioner's ineffective assistance of counsel claims, the court is left to determine whether it is barred from addressing (1) ground one, the petitioner's argument concerning trial counsel's failure to adequately prepare the alibi witness, and (2) ground five, the petitioner's argument that failure to adequately prepare the alibi witness, when considered cumulatively with counsel's other alleged deficiencies, specifically failure to collect footprint evidence and failure to investigate possible jury tampering, necessitates a new trial.

"If the state court declined to reach the merits of the petitioner's claim because of a procedural default, that default must constitute an independent and adequate state-law ground in order to be a bar to federal habeas relief." Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000).  Whether the ground is independent depends on state law and whether it is adequate depends on federal law. Liegakos v. Cooke, 106 F.3d 1381, 1385 (7th Cir. 1997).  A procedural default constitutes an independent state-law ground if "the last state court to consider the question actually relied on procedural default as the basis for its decision." Braun, 227 F.3d at 912 (citing Willis v. Aiken, 8 F.3d 556, 561 [7th Cir. 1993]).  The state court must have "'clearly and expressly' relied on the procedural default as the basis of its ruling." Id. (quoting Harris v. Reed, 489 U.S. 255, 263 [1989]).

"To be an adequate ground of decision, the state's procedural rule must be both firmly established and regularly followed." Id. (quotations omitted).  It must be applied in a "consistent and principled way; it cannot be employed infrequently, unexpectedly, or freakishly." Id.

(quotations omitted). Moreover, "[t]he state rule of practice must have been in place, and enforced, 'by the time as of which it is to be applied.'" Liegakos, 106 F.3d at 1385 (quoting Ford v. Georgia, 498 U.S. 411, 424 [1991]). The disposition of the last state court to issue an opinion determines whether the state has invoked a ground of forfeiture. Liegakos, 106 F.3d at 1385.

The last state court to consider the issue, the Wisconsin Court of Appeals, relied on procedural default as the basis of its decision. Relying on state statute and the state supreme court's decision in the oft-cited case of State v. Escalona-Naranjo,[3] the appeals court stated in relevant part:

> A motion brought under § 974.06 is typically barred, if filed after a direct appeal, unless the defendant shows a sufficient reason why he or she did not, or could not, raise the issues in the motion preceding the first appeal. See State v. Escalona-Naranjo, 185 Wis.2d 168, 185 (1994).
> Ineffective assistance of appellate counsel may constitute a "sufficient reason" for not previously raising an issue. When appellate counsel is allegedly ineffective for failing to pursue certain issues on appeal, a defendant must demonstrate that the ignored issues were stronger than those actually presented.
>
> . . . . .
>
> On appeal, Ruleau claims trial counsel was ineffective for failing to meet with and adequately prepare alibi witness Perket, failing to examine footprint evidence, and failing to follow up on the possibility of jury tampering. Further, Ruleau claims, these errors cumulatively warrant a new trial.
> What is immediately striking about Ruleau's appellate argument, however, is that he has completely failed to allege, much less demonstrate, any error on the part of postconviction/appellate counsel, despite the fact that such ineffectiveness was part of his Wis. Stat. § 974.06 motion. Because there is no discussion of ineffectiveness of postconviction/appellate counsel on appeal, Ruleau cannot use that alleged error to circumvent Escalona's bar on successive motions.
> Thus, the question is whether Ruleau had a sufficient reason for failing to raise in his first motion the issues presented in his most recent motion. He offers no explanation for why his current claims of trial counsel's ineffectiveness could not have been previously pursued and at least one – problems relating to his alibi witness – is repetitive. Once litigated, a matter cannot be relitigated in a

---

[3] A KeyCite search as of October 21, 2011 showed that Escalona had been cited to by courts approximately 700 times.

subsequent postconviction proceeding "no matter how artfully the defendant may rephrase the issue." Ruleau's current motion for relief under Wis. Stat. § 974.06 is barred and we affirm.

(Amended Answer, Exh. N at 4-6) (internal citations omitted). After affirming the trial court's decision on procedural grounds, the court noted in a footnote: "Regardless, Ruleau would not prevail on the merits." Id at 6 n.4. A reading of the appellate court's opinion clearly shows that the court relied upon a procedural bar as the basis of its ruling.

Nevertheless, federal review of the petitioner's claim may still be available "if the petitioner can show cause and prejudice for [his] failure to exhaust [his] claims, or if a failure to review them on these procedural grounds would result in a fundamental miscarriage of justice." Howard v. O'Sullivan, 185 F.3d 721, 726 (7th Cir. 1999). A "fundamental miscarriage of justice" is shown where "a constitutional violation has probably resulted in the conviction of one who is actually innocent . . .." Rodriguez v. Scillia, 193 F.3d 913, 917 (7th Cir. 1999) (quoting Murray v. Carrier, 477 U.S. 478, 495-96 [1986]). "This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him." Rodriguez, 193 F.3d at 917.

The petitioner has not presented any evidence pertaining to the cause for his procedural default. Additionally, the petitioner has not attempted to show [and there is nothing in the record to show] that he was wrongly convicted. See Howard, 185 F.3d at 726. In other words, the petitioner has not "made an attempt to show actual innocence, as opposed to legal innocence, as required to support the finding of a fundamental miscarriage of justice." Spreitzer v. Schomig, 219 F.3d 639, 648-49 (7th Cir. 2000). Moreover, the petitioner has failed "to show that it is more likely than not that no reasonable juror would have convicted him." Rodriguez, 193 F.3d at 917. Therefore, this court is barred from reviewing the petitioner's claims of

ineffective assistance of counsel to the extent they are based on trial counsel's failure to prepare the alibi witness, failure to collect footprint evidence, and failure to investigate possible jury tampering.  In addition, the court is barred from addressing the petitioner's cumulative prejudicial effect argument to the extent it is based on these issues.

The court will now consider whether the state court's findings as to the petitioner's remaining claims were contrary to or an unreasonable application of Strickland.    Pursuant to Strickland, a petitioner "must show that counsel's performance was deficient . . [and] . . . the deficient performance prejudiced the defense." 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  Id.

The first component requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Under the second component, a petitioner "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  A petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687. If the court determines that the petitioner has failed to satisfy either component of the Strickland test, it need not address the other.  See Chichakly v. United States, 926 F.2d 624, 630-31 (7th Cir. 1991).

The Supreme Court has instructed courts that in evaluating the performance of a trial attorney they are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  As such, the

petitioner "has a heavy burden in proving a claim of ineffectiveness of counsel." Jarrett v. United States, 822 F.2d 1438, 1441 (7th Cir. 1987) (citing Strickland, 466 U.S. at 687). The performance of trial counsel should not be deemed constitutionally deficient merely because of a tactical decision made at trial that in hindsight appears not to have been the wisest choice. See Strickland, 466 U.S. at 689.

When considering claims of ineffective assistance of counsel on collateral attack from a state court conviction, courts do not apply the Strickland standard directly. Raygoza v. Hulick, 474 F.3d 958, 963 (7th Cir. 2007). Courts' "consideration is mediated by the standards ser forth in 28 U.S.C. §2254(d)(1)." Id. Section 2254(d)(1) "adds a layer of respect for the state court's application of [Strickland]." Holman v. Gilmore, 126 F.3d 876, 882 (7th Cir. 1997). Therefore, courts addressing ineffective assistance of counsel claims on habeas review must honor reasonable state court decisions, meaning that only a clear error in applying Strickland's standard would support a writ for habeas corpus. Here, the court must determine whether the court of appeals' rejection of the petitioner's ineffective assistance of counsel claim was either "contrary to, or involved an unreasonable application of" the performance and prejudice rules set out in Strickland. See Washington, 219 F.3d at 628.

The Wisconsin Court of Appeals began by addressing trial counsel's elicitation of and failure to prevent admission of improper testimony. First, the court discussed trial counsel's failure to move to strike Dulak's testimony regarding the petitioner's prior drug use. The court concluded that counsel's choice not to strike such testimony was not deficient given counsel's employment of "a reasonable defense strategy to present evidence that would place Ruleau at the jail, [where he underwent a urinalysis], as close as possible to the time periods of the two break-ins." (Amended Answer, Exh. F. at 7.) The court reasoned that the jury already had

reason to know of the petitioner's prior drug use. In addition, it noted that Dulak was not being an effective witness when he gave such testimony. Therefore, a motion to strike was unnecessary.

Second, the court addressed trial counsel's elicitation of and failure to mitigate the impact of testimony related to a warranty card in Dulak's car that may have been for an item stolen while the petitioner was incarcerated. The court determined that counsel's strategy to use this evidence in his closing argument as a reason to discredit Dulak's testimony that the petitioner led him to the safe, rather than the other way around, was also a strategy "within the range of professionally competent assistance." (Amended Answer, Exh. F. at 9.)

Third, the court addressed testimony elicited by the prosecution from Ms. Perket, the petitioner's girlfriend and alibi witness, related to the petitioner's two prior incarcerations. The court determined that the jury already knew about the petitioner's four-month incarceration because it had been introduced as part of the defense's strategy to discredit Dulak. In addition, the court determined that Ms. Perket's testimony related to a one-month period of incarceration was much shorter, and a motion to strike it would not have changed the fact that the jury already heard the testimony. Therefore, the court concluded that counsel's performance was not deficient.

Finally, the court addressed testimony admitted over counsel's objection related to the petitioner's character for truth-telling. The court of appeals concluded that Ms. Perket's testimony that the petitioner did not always tell her the truth "is so general in nature and so unsurprising as a generality that a jury is unlikely to attach any significance to it in evaluating a person's guilt for a crime." (Amended Answer, Exh. F at 19.)

In his brief in support of his petition for habeas corpus, the petitioner addresses this ground for relief while discussing counsel's failure to prepare Ms. Perket which, as previously determined, is an issue this court is barred from reviewing. Without considering the petitioner's arguments related to preparation of the alibi witness, the petitioner's argument appears to boil down to the following: eliciting testimony related to the petitioner's presence at the jail on the night of the burglaries denied the petitioner effective assistance of counsel because such testimony was not sufficient to establish an alibi.

The petitioner does not address the court of appeals' individual findings, nor does he explain how those findings were an unreasonable application of or contrary to Strickland. This court's own review of the record indicates that, given the circumstances, trial counsel's choices were part of a reasonable trial strategy to show that the petitioner could not have participated in the burglaries and theft of the Helen's Edgewater Tavern safe, thus shifting blame to Dulak. Whether that strategy was, in hindsight, the wisest is a question not appropriately addressed by the court. Instead, what matters is whether the petitioner can show that counsel's action could not be considered sound trial strategy under the circumstances he faced. Strickland, 466 U.S. at 689. Here, the petitioner has made no such showing. Accordingly, the court concludes that the court of appeals' finding was neither contrary to, nor an unreasonable application, of the Strickland standard.

With regard to cross examination of Dulak, the state appeals court concluded that counsel's failure to elicit testimony regarding Dulak's ongoing plea negotiations was deficient because "[k]nowledge that Dulak was involved in plea negotiations with the State would have permitted the jury to infer that Dulak was implicating Ruleau to gain an advantage in those negotiations." (Amended Answer, Exh. F at 14.) However, the court concluded that such

deficiency did not prejudice the petitioner because it did not undermine the verdict. The court reasoned that alerting jurors to a state witness' ongoing plea negotiations in connection with the same charges is only one of many ways that a witness's credibility may be undermined, and in this case, Dulak's credibility was damaged in other ways. First, the court concluded that "the jury had before it other evidence from which it could infer that Dulak had a motive to implicate Ruleau in the theft of the safe and deny his involvement." (Amended Answer, Exh. F at 16.) Second, the court concluded that Dulak's credibility was undermined by "non-responsive and evasive answers that elaborated on inconsequential details in a self-contradictory manner." (Amended Answer, Exh. F at 17.) Third, Dulak's testimony that the petitioner led him to the safe was undermined by his own testimony that the petitioner would have no reason to know about the tools used to break into the safe. Finally, the court concluded that substantial evidence was presented to show that both Dulak and the petitioner were responsible for the burglary at Helen's Edgewater Tavern.

The petitioner argues that in light of the fact that the trial judge was unaware of Dulak's ongoing plea negotiations, the court of appeals' finding that counsel's failure to raise those negotiations during cross examination did not prejudice the defense is an unreasonable application of Strickland. He further asserts that failure to raise Dulak's plea negotiations on cross examination "took the teeth out of Ruleau's right of confrontation," which is guaranteed by the Sixth Amendment and federal case law, namely Crawford v. Washington, 541 U.S. 36 (2004). (Brief in Support of the Petitioner's Amended Petition for Writ of Habeas Corpus [Petitioner's Brief] at 17.) Therefore, the petitioner asserts that "any conclusion that the omission of the exercise of the defendant's right to confrontation is not prejudicial to that (sic) defendant runs contrary to firmly established federal law." Id.

Both of the petitioner's arguments are merely conclusory and unsupported by case law or analysis. The petitioner does not explain how the court misapplied <u>Strickland</u> in reaching its finding that the petitioner was not prejudiced by counsel's deficient act. Moreover, the petitioner cites, but does not discuss <u>Crawford</u> or how the state court's findings were contrary to or an unreasonable application of its ruling.[4] After reviewing the record, the court determines the court of appeal's finding that the petitioner was not prejudiced by counsel's failure to cross examine Dulak was a reasonable application of <u>Strickland</u>'s test for prejudice. The jury knew that Dulak was charged with the same crimes as the petitioner and the record is replete with testimony seriously undermining Dulak's credibility.

With regard to the accomplice jury instruction, the court of appeals agreed that the instruction could have been clearer, but doubted that the instruction led the jury to believe that Dulak admitted involvement in all five charges because the instruction referred to a single crime. There was no question that the petitioner was charged with five crimes while Dulak admitted involvement in only one. In addition, the appeals court reasoned that even if the jury mistakenly thought that Dulak admitted involvement in all five crimes, such mistake would not have disadvantaged the petitioner because trial counsel's defense strategy was to implicate Dulak in the burglaries, and to show that the petitioner could not have acted with Dulak because he could not be in two places at once. Therefore, any misunderstanding could only benefit the petitioner.

---

[4] In fact, the state courts never discussed <u>Crawford,</u> likely because the petitioner never asserted that his confrontation rights were violated. As such, consideration of any argument based on <u>Crawford</u> were procedurally defaulted because the issue was not fairly presented to the state courts.

The petitioner provides the court with no explanation as to how the state court of appeals' ruling was contrary to, or an unreasonable application of, Strickland. Moreover, a review of the record supports the court of appeals' finding. Therefore, the court cannot say that the court of appeals ruling was contrary to or an unreasonable application of clearly established federal law.

## PREJUDICIAL JOINDER

The petitioner asserts that the charges pertaining to the Brothers Three break-in should have been tried in a separate trial because "there was absolutely no proof introduced at trial which would have implicated the Petitioner in the attempt to enter the Brothers Three." (Petitioner's Brief at 23.) He maintains that there was no evidence tying him to the Brothers Three; therefore, there was no common scheme or plan. In addition, the petitioner asserts that there is evidence showing that the jury was divided on the issue of the petitioner's guilt in the Helen's Edgewater Tavern burglary and that it is possible that the jury split the verdict to resolve their differences.

The state appeals court addressed the petitioner's prejudicial joinder argument on direct appeal. The court concluded that the petitioner was not prejudiced by the evidence related to the Brothers Three charges. In reaching this conclusion, the court applied the test for prejudicial spillover outlined by the court in State v. McGuire, 204 Wis. 2d 372, 556 N.W.2d 111 (Ct. App. 1996).

Section 2254(a) of Title 28 of the United States Code states that "a district court shall entertain a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Federal habeas corpus review does not reach errors of state law.

Johnson v. Bett, 349 F.3d 1030, 1037 (7th Cir. 2003) (citing Estelle v. McGuire, 502 U.S. 62, 68 [1991]).

The petitioner alleges that joinder of the Brothers Three and Helen's Edgewater Tavern charges violated Rule 8(a) of the Federal Rules of Criminal Procedure. However, the state court did not apply the federal rules in its state proceedings. The state trial court applied Wisconsin's Rules of Criminal Procedure, see Wis. Stat. § 971.12, and the court of appeals relied on McGuire,[5] a Wisconsin case interpreting the state procedural rules when it determined that joining the charges did not prejudice the petitioner. Moreover, the petitioner does not allege that joinder amounted to denial of a fair trial. See Biskup v. McCaughtry, 20 F.3d 245, 259 (7th Cir. 1995) ("The standard for the district court under § 2254 is that an improper joinder constitutes a federal constitutional violation only if the prejudice was so great as to deny a fair trial."). Therefore, the petitioner has failed to assert a violation of the federal Constitution or laws or treaties of the United States upon which federal habeas relief may be granted.[6]

## IMPROPER JURY INSTRUCTION

The petitioner asserts that the trial court bore final responsibility for ensuring that the instruction was modified to reflect the evidence presented at trial.

As discussed previously, the Wisconsin Court of Appeals determined that the accomplice jury instruction did not prejudice the petitioner. This finding was made, however, in relation to the petitioner's claim of ineffective assistance of counsel. Therefore, the court applied the Strickland test, which applies only to questions of effectiveness of counsel. The court did not

---

[5]  In State v. McGuire, 204 Wis.2d 372, 556 N.W.2d 111, 114-115 (Wis. App. 1996), the court of appeals adopted the "retroactive misjoinder" theory originally espoused by the Court of Appeals. 556 N.W.2d at 114-115.

[6]  Apparently this ground for relief was not reviewed under Rule 4 because it was not raised in the petitioner's original petition. Instead, it was raised in the petitioner's amended petition, which was not screened pursuant to Rule 4.

address the trial court's responsibility for allowing the instruction because the petitioner did not raise it on appeal.

Generally, a federal court can examine the merits of the petitioner's writ of habeas corpus only if he has fairly presented his claim in each appropriate state court, thereby alerting that court to the federal nature of the claim. Baldwin v. Reese, 541 U.S. 27, 29 (2004). However, section 2245(b)(3) states the exhaustion requirement may be waived if the respondent, through counsel, expressly waives the requirement. See Perruquet v. Briley, 390 F.3d 505, 517-18 (7th Cir.2004). In this case, in its reply to the amended petition, the respondent admitted that the petitioner exhausted his state court remedies on the claims asserted in his petition, thus waiving his exhaustion defense. See Lilly v. Gilmore, 988 F.2d 783, 784-85 (7th Cir. 1993).

Where an issue is not addressed by the state court, the federal court conducts a de novo review of the petitioner's claims. Toliver v. McCaughtry, 539 F.3d 766, 775 (7th Cir. 2008). However, the court need not undergo such analysis here. A district court will grant habeas relief only if the jury instruction violated the petitioner's constitutional right to due process. Estelle, 502 U.S. at 72. As with his prejudicial joinder argument, the petitioner's petition and accompanying brief fail to assert a violation of the federal Constitution.[7] Therefore, this court cannot review this claim.

---

[7] The only federal case cited to by the petitioner in support of his argument is United States v. Bolin, 35 F.3d 306 (7th Cir. 1994) for the proposition that "a jury should be instructed to closely examine the testimony of an alleged accomplice because such testimony is highly suspect." (Petitioner's Brief at 24.)

## CUMULATIVE PREJUDICIAL EFFECT OF ALL ERRORS

The petitioner asserts that the cumulative prejudicial effect of the litany of errors committed by trial counsel, joinder of the Brothers Three and Helen's Edgewater Tavern charges, and the improper instruction of the jury requires the court to grant habeas relief.

The petitioner raised this argument before the state appeals court on direct review, although couching it in slightly different terms. Specifically, he argued that because of all the alleged errors, the real controversy was not tried, necessitating a new trial in the interests of justice. The court of appeals rejected the petitioner's claim, stating that it could not exercise its discretion to reverse a judgment unless petitioner showed either "that the jury was precluded from considering important testimony that bore on an important issue or that certain evidence which was improperly received clouded a crucial interest in the case." (Amended Answer, Exh F. at 22 (citing State v. Chu, 643 N.W.2d at 878). The court concluded that the petitioner did not satisfy either prong. The court stated that the absence of evidence of Dulak's plea negotiations did not prevent an important issue from being tried because the jury had sufficient other evidence to conclude that Dulak had motive to deny his involvement and implicate the petitioner in the Helen's Edgewater Tavern burglary. In addition, the court concluded that the evidence the petitioner asserted should have been excluded or struck was either part of a reasonable defense strategy or insignificant. Therefore, the court declined to exercise its powers of discretionary reversal.

As previously discussed, federal habeas review does not reach errors of state law. Here, the court of appeals rejected the petitioner's request for a new trial on state procedural grounds,

specifically its power of discretionary reversal granted by Wis. Stat. §752.35.[8]  Moreover, this

court has declined to grant federal habeas relief on each individual claim.  Considering each

claim together, rather than individually, does not change the court's final disposition.

In sum, the decisions of the Wisconsin courts with respect to the petitioner's claims of

ineffective assistance of counsel, were neither contrary to, nor an unreasonable application of,

clearly established federal law as determined by the Supreme Court of the United States.  Also,

this court is barred from addressing the petitioner's claims of prejudicial joinder and cumulative

prejudicial effects because each claim was resolved by the state court based on state

procedural law.  Finally, the petitioner's claim of an improper jury instruction failed to set forth

a claim addressable upon federal habeas review.  Therefore, for the reasons stated herein, the

petitioner's petition for a writ of habeas corpus will be denied.

### Certificate of Appealability

On December 1, 2009, Rule 11(a) of the Rules Governing Section 2254 Cases in the

United States District Court was amended.  According to the amendment, the " district court

must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant."  "A certificate of appealability may issue . . . only if the applicant has made a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make

a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that

---

[8]  Wis. Stat. 752.35 states:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been
> fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the
> judgment or order appealed from, regardless of whether the proper motion or objection appears in the
> record and may direct the entry of the proper judgment or remit the case to the trial court for entry of
> the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and
> the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary
> to accomplish the ends of justice.

"reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893, and n. 4).

When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484. As the Court explained: "This construction gives meaning to Congress' requirement that a prisoner demonstrate a substantial underlying constitutional claims and is in conformity with the meaning of the 'substantial showing' standard provided in Barefoot, 463 U.S. at 893, n.4, and adopted by Congress in ADEPA." Slack, 529 U.S. at 484.

In this case, reasonable jurists would not find the court's decision to deny the petition on procedural or substantive grounds debatable or wrong. Thus, the court will deny a certificate of appealability as to all of the petitioner's claims.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this <u>24th</u> day of October, 2011.

BY THE COURT:


<u>/s Patricia J. Gorence</u>
Patricia J. Gorence
United States Magistrate Judge